**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

*Attorneys for Plaintiffs and the putative*
*FLSA Collective and Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JOSE LUCIO MOLINA MEDEL and MANUEL MOLINA MEDEL, Individually and on Behalf of All Others Similarly Situated,** | |
| **Plaintiffs,** | **CLASS & COLLECTIVE ACTION COMPLAINT** |
| -against- | |
| **70-30 AUSTIN STREET BAKERY INC. d/b/a MARTHA'S COUNTRY BAKERY, 41-06 BELL BLVD. BAKERY LLC, GEORGE STERTSIOS, ANTONIO ZANNIKOS and GEORGE DOULIAS, Jointly and Severally,** | **Jury Trial Demanded** |
| **Defendants.** | |

Plaintiffs Jose Lucio Molina Medel and Manuel Molina Medel (the "Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

1

## NATURE OF THE ACTION

1.      Plaintiffs are former dishwashers, bussers, food prep, baker and pastry helper at Defendants' bakery/coffee shops located in Queens, New York.  For their work, during the relevant time period, Plaintiffs were not paid minimum wages for all hours worked and were not paid overtime premiums for hours worked over forty (40) in a given workweek.

2.      Plaintiffs bring this action to recover unpaid minimum wages and overtime premium pay owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq*. Plaintiffs also bring claims for unpaid spread-of-hours premiums, and for failure to provide proper wage notices and wage statements pursuant to NYLL §§ 190 *et seq*. and the supporting regulations.

3.      Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees of Defendants and their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of all non-management employees working for Defendants in New York.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

6.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiffs:**

7.      <u>Plaintiff Jose Lucio Medina Medel</u> ("J. Medina") was, at all relevant times, an adult individual residing in Queens County, New York.

8.      <u>Plaintiff Manuel Medina Medel</u> ("M. Medina") was, at all relevant times, an adult individual residing in Queens County, New York.

9.      Throughout the relevant time period, Plaintiffs performed work for Defendants at "Martha's Country Bakery," located at 70-28 Austin Street, Forest Hills, New York 11375 and 41-06 Bell Blvd., Bayside, New York 11361.

10.     Plaintiffs consent in writing to be parties to this action, pursuant to 29 U.S.C. § 216(b), and their consent forms are attached hereto.

**Defendants:**

11.     70-30 Austin Street Bakery Inc. is an active New York Corporation doing business as "Martha's Country Bakery", with its principal place of business at 70-28 Austin Street, Forest Hills, New York 11375 (the "Forest Hills Location").

12.     41-06 Bell Blvd. Bakery LLC, is an active New York Corporation doing business as "Martha's Country Bakery", with its principal place of business at 41-06 Bell Blvd., Bayside, New York 11361 (the "Bayside Location").

13.     The corporate entities listed in paragraphs 11 and 12 are hereinafter referred to collectively as "Martha's Country Bakery" or the "Corporate Defendants."

14.    At all relevant times, the Corporate Defendants operated together as a single business enterprise utilizing the same practices and policies and, when necessary, shared employees between the various Martha's Country Bakery locations.

15.    Defendants' bakeries, which are operated through the Corporate Defendants, are engaged in related activities, share common ownership and management, share supplies and employees, and have a common business purpose.

16.    The Corporate Defendants are joint employers of Plaintiffs and the Collective Action Members/Class Members.

17.    Upon information and belief, Defendant George Stertsios ("Stertsios") is an owner and operator of the Corporate Defendant.

18.    Upon information and belief, Defendant Antonio Zannikos ("A. Zannikos") is an owner and operator of the Corporate Defendant.

19.    Upon information and belief, Defendant George Doulias ("Doulias" and collectively with "Stertsios," and "A. Zannikos," the "Individual Defendants" and, collectively with the Corporate Defendants, the "Defendants") is an owner and operator of the Corporate Defendant.

20.    The Individual Defendants maintained operational control over the Corporate Defendants and jointly managed Martha's Country Bakery by determining the wages and compensation of employees, establishing the schedule of employees, maintaining employee records, and through possessing the authority to hire and fire employees, including Plaintiffs.

21.    The Individual Defendants jointly employed Plaintiffs, and all similarly situated employees, by acting in the interest of each other with respect to the employees, paying the

4

employees by the same methods, and sharing control over the employees.

22.     The Individual Defendants participated in the day-to-day operations of the Corporate Defendants and acted intentionally in their direction and control of Plaintiffs and the Defendants' other similarly situated employees, and are each "employers" pursuant to the FLSA, 29 U.S.C. § 203(d), 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and are jointly and severally liable with the Corporate Defendants.

23.     At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

24.     At all relevant times, Defendants employed, and/or continue to jointly employ, Plaintiffs and each of the Collective Action members within the meaning of the FLSA.

25.     At all relevant times, Plaintiffs, the opt-in plaintiffs and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

26.     Upon information and belief, at all relevant times, the Corporate Defendants have had gross revenues in excess of $500,000.00.

## FLSA COLLECTIVE ACTION ALLEGATIONS

27.     Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiffs bring their First and Second Causes of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All persons employed by Defendants at any time since August 29, 2015 and through the entry of judgment in this case (the "Collective Action Period") who worked as non-management employees at any Martha's Country Bakery location (the "Collective Action Members").

28.     A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policies of failing to pay minimum wage for all hours worked and failing to pay overtime premiums for work performed in excess of forty (40) hours each week.  As a result of these policies, Plaintiffs and the Collective Action Members did not receive the legally-required minimum wages for all hours worked and overtime premium payments for all hours worked in excess of forty (40) hours per week.

29.     Plaintiffs and the Collective Action Members have substantially similar job duties and are paid pursuant to a similar, if not the same, payment structure.

## RULE 23 CLASS ACTION ALLEGATIONS

30.     Pursuant to the NYLL, Plaintiffs bring their Third through Seventh Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All persons employed by Defendants at any time since August 29, 2012 and through the entry of judgment in this case (the "Class Period") who worked as non-management employees at any Martha's Country Bakery location in New York (the "Class Members").

31.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

32.     The Class Members are so numerous that joinder of all members is impracticable.

33.     Upon information and belief, there are well in excess of forty (40) Class Members.

6

34.    <u>The questions of law and fact common to the Class predominate over any questions solely affecting the individual members of the Class</u>. These common questions include, but are not limited to:

a.    whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

b.    whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class Members;

c.    whether Defendants failed and/or refused to pay Plaintiffs and the Class Members minimum wage for all hours worked;

d.    whether Defendants failed and/or refused to pay Plaintiffs and the Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

e.    whether Defendants failed to pay Plaintiffs and the Class Members an extra hour of minimum wage when working shifts or split shifts in excess of ten (10) hours;

f.    whether Defendants failed to provide Plaintiffs and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

g.    whether Defendants failed to provide proper wage notice to Plaintiffs and Class Members at the beginning of their employment and/or on February 1 of each year as required by the NYLL;

h.    whether Defendants' failure to properly pay Plaintiffs and the Class Members lacked a good faith basis; and

7

      i.   whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

35.   <u>Plaintiffs' claims are typical of the Class Members' claims</u>. Plaintiffs, like all Class Members, are restaurant/bakery employees of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiffs, like all Class Members, were, *inter alia*, paid less than the statutory minimum wage for all hours worked, were not paid overtime premium pay for hours worked over forty (40) hours in a given workweek, were not paid spread-of-hours premiums when working a shift and/or split shift of ten (10) or more hours, did not receive proper wage statements and wage notices. If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

36.   <u>Plaintiffs and their Counsel will fairly and adequately represent the Class</u>. There are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

37.   Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

38.   <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>.

39.   Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

40.   The individual members of the Class have no interest or capacity to bring separate

actions; Plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

**Martha's Country Bakery**

41.    Upon information and belief, during the relevant time period, Defendants have owned and operated at least five (5) Martha's Country Bakery locations:

- Forest Hills Location (70-28 and 70-30 Austin Street, Forest Hills New York 11375);

- Astoria Location (36-21 Ditmars Blvd., Astoria, New York 11105);

- Bayside Location (41-06 Bell Blvd., Bayside, New York 11361);

- Williamsburg 263 Location (263 Bedford Avenue, Brooklyn, New York 11211); and

- Williamsburg 175 Location (175 Bedford Avenue, Brooklyn, New York 11211).

42.    The Forest Hills, Astoria, Bayside, and Williamsburg 263 locations have the following operating hours: Monday through Thursday from 6:00 am to midnight; Friday and Saturday from 6:00 am to 1:00 am; and Sunday from 6:00 am until midnight. The Williamsburg 175 Location is open Sunday through Thursday from 6:00 am until midnight and Friday and Saturday from 6:00 am until 1:00 am. (https://marthascountrybakery.com/location/).

43.    Upon information and belief, the Individual Defendants have owned and operated certain Martha's Country Bakery locations through the Corporate Defendants named in the current and present action, since in or around 2007.

44.    70-30 Austin Street Bakery Inc. was registered with the New York State Department of State, Division of Corporations on February 16, 2007.

45.    In the corporate filings with the New York State Department of State, Division of Corporations, Defendant George Stertsios is listed as the Chief Executive Officer for 70-30 Austin Street Bakery Inc.

46.    41-06 Bell Blvd. Bakery LLC was registered with the New York State Department of State, Division of Corporations on September 26, 2008.

47.    Upon information and belief, Defendants George Stertsios, Antonio Zannikos and George Doulias, are a constant presence and regularly visit the various locations of Martha's Country Bakery, to manage and/or check in on their managers and the operations of the bakeries/restaurants and take an active role in ensuring that the bakeries/restaurants are run in accordance with their procedures and policies.

48.    Upon information and belief, at all relevant times, the Individual Defendants have had power over payroll and personnel decisions at Martha's Country Bakery, including the power to hire and fire employees, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment.

49.    Upon information and belief, the Individual Defendants, directly or through their agents and employees, operate and manage all Martha's Country Bakery locations with the same or substantially similar employment practices and policies, and through common management, ownership and financial control.

**Plaintiffs' Work for Defendants**

50.     **Plaintiff Jose Lucio Molina** was employed by Defendants as a dishwasher, food prep, baker and pastry helper, and busser at the Forest Hills Location of Martha's Country Bakery from in or around August 2012 through in or around July 22, 2018 (the "J. Molina Employment Period").

51.     Throughout the J. Molina Employment Period, Plaintiff J. Molina was typically scheduled to work six (6) days per week, with most Wednesdays off. Although his schedule varied throughout his employment, at the beginning of his employment from in or around August 2012 to in or around 2014, when Plaintiff J. Molina worked for Defendants solely as a dishwasher or as a dishwasher, food prep, and baker and pastry helper, J. Molina typically worked six (6) days per week, from approximately 6:00 pm to approximately 6:00 am, for a total of seventy-two (72) hours per week.

52.     Thereafter, when Plaintiff J. Molina worked as a busser, from in or around the end of 2014 to in or around July 2015, Plaintiff generally worked six (6) days per week, with most Wednesdays off, as follows: Monday through Thursday, from approximately 1:00 pm to approximately 12:00 am; Friday and Saturday, from approximately 1:00 pm to approximately 1:00 am; and Sunday from approximately 1:00 pm to approximately 12:00 am, for a total of approximately sixty-eight (68) hours per week.

53.     From in or around July 2015 to in or around July 2016, Plaintiff J. Molina returned to his position in the kitchen as a dishwasher, food prep, and baker and pastry helper, working six (6) days per week, with most Wednesdays off with the following schedule: Monday through Friday, from approximately 3:00 pm to between approximately 10:00 pm and 1:00 am; and

11

Saturday and Sunday, from approximately 3:00 pm to approximately 12:00 am, for a total of approximately forty-six (46) to fifty-eight (58) hours per week.

54.      From in or around July 2016 to the end of his employment period, in or around July 2018, Plaintiff J. Molina was assigned back to the busser position, working generally five (5) days per week, with most Mondays and Tuesdays off, with the following schedule: Wednesdays, Thursdays, and Sundays, from approximately 3:00 pm to approximately 12:00 am and sometimes more, nine (9) hours shifts, and Fridays and Saturdays from approximately 3:00 pm to approximately 1:00 am and sometimes more, ten (10) hours shifts, for a total of approximately forty-seven (47) to fifty (50) hours per week.

55.      For his work, during the time Plaintiff J. Molina worked in the kitchen solely as a dishwasher, from in or around 2012 to in or around 2014, Plaintiff was paid a fixed salary of approximately four hundred and eighty dollars ($480.00) per week.  During the period Plaintiff J. Molina worked as a dishwasher, food prep and baker helper, Plaintiff J. Molina was paid a fixed salary of approximately four hundred and ninety dollars ($490.00) per week.  During the second period Plaintiff J. Molina worked in the kitchen, from in or around July 2015 to in or around July 2016, Plaintiff J. Molina was paid a fixed salary of approximately six hundred dollars ($600.00) per week.

56.      During the first period Plaintiff J. Molina worked as a busser, from in or around the end of 2014 to in or around July 2015, Plaintiff J. Molina was paid seven dollars ($7.00) per hour, for all hours worked including those beyond forty (40) in a given workweek.  During the second period Plaintiff worked as a busboy, from in or around July 2016 to in or around December 2017, Plaintiff was paid seven dollars and fifty cents ($7.50) per hour, for all hours worked including

12

those beyond forty (40) in a given workweek. From in or around January 2018 to the end of the J. Molina Employment Period, Plaintiff J. Molina was paid eight dollars and sixty-five cents ($8.65) per hour, by combination of check and cash. Throughout 2018, while Plaintiff J. Molina was paid $8.65 per hour, he would receive an inaccurate paystub each week reflecting 26.62 hours per week at $13.00 per hour, and cash with an accompanying paystub reflecting an inaccurate number of overtime hours worked for the week at $12.98 per hour. In total, with the check and cash payments, J. Molina was typically missing several hours of pay each week.

57.    From in or around August 2012 to in or around December 2017, Plaintiff J. Molina received each week from the manager in charge, an envelope containing his weekly payments in cash without a pay stub or any other wage statement that provided details of the hours worked during the week or his hourly pay rate. From in or around January 2018 to the end of his employment period in or around July 2018, Plaintiff J. Molina was paid in a combination of cash and check, without a proper pay stub or wage statement that provided exact information about the hours worked during the week or his correct hourly pay rate. Plaintiff J. Molina was always missing payment for all hours worked during a pay period.

58.    Plaintiff J. Molina was not paid the legally-required minimum wages for all hours worked and was not paid overtime premiums of one and one-half (1.5) times his regular hourly rate for hours over forty (40) each workweek.

59.    **Plaintiff Manuel Molina** was employed by Defendants as a busser at the Forest Hills Location and the Bayside Location of Martha's Country Bakery from in or around July 2015 through on or about July 22, 2018 (the "M. Molina Employment Period").

60.    Throughout the M. Molina Employment Period, Plaintiff M. Molina was typically

scheduled to work five (5) days per week, and frequently six (6) days per week to cover for other employees. Although his schedule varied throughout his employment, at the beginning of his employment period from in or around July 2015 to in or around 2017, Plaintiff typically worked the following schedule: Monday and Tuesday, from approximately 5:00 pm to approximately 12:00 am; Friday and Saturday, from approximately 5:00 pm to approximately 1:00 am; and Sunday from approximately 3:00 pm to approximately 12:00 am, for a total of thirty-nine (39) hours per week, and sometimes more if Plaintiff had to worked and additional day during the week.

61.    Thereafter, from in or around 2017 to the end of his employment period, in or around July 2018, Plaintiff M. Molina generally worked five (5) days per week and sometimes six (6) days per week if he was required to cover for an absent employee, with most Wednesdays and Thursdays off, as follows: Monday and Tuesday, from approximately 3:00 pm to approximately 12:00 am; Friday and Saturday, from approximately 3:00 pm to approximately 1:00 am or later; and Sunday from approximately 3:00 pm to approximately 12:00 am, for a total of approximately forty-seven (47) to fifty (50) hours per week, and sometimes more, if he was required to worked a sixth (6th) day during a given workweek.

62.    For his work, from in or around 2015 to in or around the end of 2017, Plaintiff M. Molina was paid approximately seven dollars and twenty-five cents ($7.25) per hour for all hours worked, including those beyond forty (40) in a given workweek. From in or around January 2018 to in or around July 2018, at the end of his employment period, Plaintiff M. Molina was paid eight dollars and sixty-five cents ($8.65) per hour, by combination of check and cash. Throughout 2018, while Plaintiff M. Molina was paid $8.65 per hour, he would receive an inaccurate paystub each week reflecting 26.62 hours per week at $13.00 per hour, and cash with an accompanying paystub

reflecting an inaccurate number of overtime hours worked for the week at $12.98 per hour. In total, with the check and cash payments, M. Molina was typically missing several hours of pay each week.

63.     As such, throughout during most of the M. Molina Employment Period, Plaintiff M. Molina was not paid the legally-required minimum wages for all hours worked and was not paid overtime premiums of one and one-half (1.5) times his regular hourly rate for hours over forty (40) each workweek.

64.     From in or around the July 2015 to in or around December 2017, Plaintiff M. Molina received each week from the manager in charge, an envelope containing his weekly payments in cash without a pay stub or any other wage statement that provided details of the hours worked during the week or his hourly pay rate.  From in or around January 2018 to the end of the M. Molina Employment Period, Plaintiff M. Molina was paid in a combination of cash and check, without a proper pay stub or wage statement that provided accurate information about the hours worked during the week or his correct hourly pay rate.  Plaintiff M. Molina was always missing payment for certain hours worked each pay period.

65.     During Plaintiffs' respective employment periods prior to in or around the end of 2016, Defendants did not track hours worked by Plaintiffs J. Molina and M. Molina through any formal timekeeping system.  From in or around the end of 2016 to the end of the Plaintiffs' employment with Defendants in or around July 2018, Defendants tracked hours worked through a POS System, but Plaintiffs were not paid for all hours worked during the workweek.

66.     During their respective employment periods, although Plaintiffs frequently worked a spread of more than ten (10) hours per day or split shifts, they did not receive spread-of-hours

15

premiums equal to an additional hour at the applicable minimum wage for such days.

67.    Throughout their respective employment periods, Plaintiffs were not provided with wage notices at hiring, by February 1 of each year, or proper wage statements with their wage payments each week.

68.    At no point during their respective employment periods were Plaintiffs provided with a notice, written or otherwise, regarding Defendants' intention to pay Plaintiffs a reduced, "tipped" minimum wage because Plaintiffs received tips from customers.

**Defendants' Unlawful Corporate Policies**

69.    Plaintiffs and the Collective Action and Class Members were all paid pursuant to the same corporate policies of Defendants, including failing to pay minimum wages, overtime premiums, and spread-of-hours premiums.

70.    Plaintiffs have spoken with other employees of Defendants who were similarly paid below minimum wage for all hours worked. Defendants' failure to pay Plaintiffs minimum wages for all hours worked is a corporate policy of Defendants which applies to all of their non-management employees throughout the Class Period.

71.    Plaintiffs have spoken with other employees of Defendants who were similarly paid on a purported "salary" basis or an hourly rate, which did not include overtime premium compensation for hours worked in excess of forty (40) in a given workweek. Defendants' failure to pay Plaintiffs overtime compensation of one and one-half (1.5) times their regular hourly rate for hours over forty (40) each week is a corporate policy of Defendants which applies to non-management employees throughout the Class Period.

72.    Defendants' failure to pay Plaintiffs spread-of-hours premiums for days in which

16

Plaintiffs have worked a spread of more than ten (10) hours or a split shift has been a corporate policy which applies to all of their non-management employees who worked more than ten (10) hours in a day and/or a split shift throughout the Class Period.

73.     Defendants' policies of paying certain employees on a "salary" basis rather than an hourly basis after January 1, 2011, violated 12 N.Y.C.R.R. § 146-2.5.

74.     Defendants have not provided Plaintiffs or Class Members with wage notices at the time of hire or by February 1 of each year.

75.     Throughout the Class Period and, upon information and belief, continuing until today, Defendants have likewise employed other individuals like Plaintiffs in positions that require little skill and no capital investment.  Upon information and belief, such individuals were required to work for less than minimum wage and were not paid time and one-half when working in excess of forty (40) hours per week.

76.     Additionally, such individuals were not provided spread-of-hours premiums while working shifts in excess of ten (10) hours, nor were they provided with proper wage statements and wage notices at hiring, by February 1 of each year, or proper wage statements with their wage payments on a weekly basis.

77.     Upon information and belief, throughout the Class Period and continuing until today, defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

## FIRST CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE
### (Brought on Behalf of Plaintiffs and the Collective Action Members)

78.     Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

79.     By failing to pay minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 206 and 215(a)(2).

80.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

81.     Defendants' failure to pay minimum wages for all hours worked caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Therefore, Plaintiffs and the Collective Action Members are entitled to recover from Defendants their full unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNPAID OVERTIME
### (Brought on Behalf of Plaintiffs and the Collective Action Members)

82.     Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

83.    By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

84.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

85.    Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

### THIRD CAUSE OF ACTION
### NEW YORK LABOR LAW – UNPAID MINIMUM WAGE
**(Brought on Behalf of Plaintiffs and the Class Members)**

86.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

87.    Defendants willfully violated Plaintiffs' and Class Members' rights by failing to pay minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

88.    Defendants' failure to pay minimum wage for all hours worked caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid minimum wages, damages for

unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

### FOURTH CAUSE OF ACTION
### NEW YORK LABOR LAW – UNPAID OVERTIME
### (Brought on Behalf of Plaintiffs and the Class Members)

89.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

90.     Defendants willfully violated Plaintiffs and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

91.     Defendants' failure to pay overtime premium compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

### FIFTH CAUSE OF ACTION
### NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS PREMIUMS
### (Brought on Behalf of Plaintiffs and the Class Members)

92.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

93.      Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Class Members worked either a split shift or more than ten (10) hours per day, in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

94.      Defendants' failure to pay spread-of-hours compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**SIXTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICES**
**(Brought on Behalf of Plaintiffs and the Class Members)**

95.      Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

96.      Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195, in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable;  the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the

employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

97.    Due to Defendant's violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendant fifty dollars ($50) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq*., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**SEVENTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENTS**
**(Brought on Behalf of Plaintiffs and the Class Members)**

98.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

99.    Defendants have willfully failed to supply Plaintiffs and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

100.    Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants two hundred and fifty dollars ($250) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

a.    Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

c.    An order tolling the statute of limitations;

d.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

23

e.      An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.      An award of compensatory damages as a result of Defendants' failure to pay minimum wage and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.      An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.      An award of actual and liquidated damages for the non-payment of spread-of-hours pay for each split shift and/or shift worked in New York in excess of ten hours;

i.      Fifty dollars ($50.00) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-b;

j.      Two hundred and fifty dollars ($250.00) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-d;

k.      An award of prejudgment and post-judgment interest;

24

l.    An award of costs and expenses of this action together with reasonable attorneys'
and expert fees; and

m.    Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial
by jury on all questions of fact raised by the complaint.

Dated: New York, New York
      August 29, 2018

**PELTON GRAHAM LLC**

By: _____
Brent E. Pelton (BP 1055)
pelton@peltongraham.com
Taylor B. Graham (TG 9607)
graham@peltongraham.com
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs and the putative*
*FLSA Collective and Class*

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Martha's Country Bakery, Georgios Stertsios, Antonio Zannikos y sus demás respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____
Firma

Jose lucio Molina Medel
Nombre Escrito

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Martha's Country Bakery, Georgios Stertsios, Antonio Zannikos y sus demás respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.


X _____          _____
        Firma                              Nombre Escrito